UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-61047-CIV-COHN/SNOW

SHERNETTE ANDERSON and
PETAGAY WYNTER,

        Plaintiffs,

vs.

WAL-MART STORES, INC., a Delaware
corporation, et al.,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF ANDERSON'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Rudolph Nesbitt, Jr.

("Nesbitt") and Alfred T. Lamberti ("Lamberti"), as Sheriff of Broward County,

(collectively "Defendants") Motion for Summary Judgment [DE 110] ("Defendants'

Motion") and Plaintiff Shernette Anderson's ("Anderson") Motion for Summary

Judgment [DE 113] ("Anderson's Motion") (collectively "Motions for Summary

Judgment").[1]  The Court has carefully reviewed the Motions for Summary Judgment,

Plaintiff Anderson's Response in Opposition to Defendants Sheriff and Nesbitt's Motion

for Summary Judgment [DE 136] ("Anderson's Response"), Defendants' Response to

Plaintiff's Motion for Summary Judgment [DE 134] ("Defendants' Response"),

Defendants' Reply to the Plaintiff's Response to Their Motion for Summary Judgment

---

[1]     Anderson and Plaintiff Petagay Wynter ("Wynter") have settled their
claims against Defendant Wal-Mart Stores, Inc.  See DE 103, 104, 106.  Because
Wynter only brought claims against Wal-Mart Stores, Inc., she no longer has any claims
pending.

[DE 143] ("Defendants' Reply"), Plaintiff Anderson's Reply in Support of Her Motion for Summary Judgment [DE 144], all of the parties' submissions, the record in the case, and is otherwise fully advised in the premises.

## I. BACKGROUND

This case stems from the September 25, 2008 arrest of Anderson at a Wal-Mart located in Lauderdale Lakes, Florida, for obstruction of justice and disorderly conduct. Defendants Rudolph Nesbitt, Jr. and Alfred T. Lamberti, as Sheriff of Broward County's, Statement of Undisputed Facts in Support of Motion for Summary Judgment [DE 111] ("Defendants' Facts") ¶ 1; Concise Statement of Material Facts in Opposition [DE 138] ("Anderson's Response Facts") ¶ 1.  Defendant Nesbitt was employed by the Broward Sheriff's Office ("BSO") as a deputy sheriff.  Plaintiff's Corrected Version of DE 114 Concise Statement of Undisputed Material Facts Filed in Support of Motion for Summary Judgment [DE 129] ("Anderson's Facts") ¶ 26; Defendants Rudolph Nesbitt, Jr. and Alfred T. Lamberti, as Sheriff of Broward County's, Response to Plaintiff's Corrected Version of DE 114 Concise Statement of Undisputed Facts in Support of Motion for Summary Judgment [DE 135] ("Defendants' Response Facts") ¶ 26.  On the date in question, as part of his employment for the BSO, Nesbitt was working a special detail assignment at the Wal-Mart as part of Wal-Mart's loss prevention initiative. Defendants' Facts ¶ 3.[2]  Wal-Mart paid the BSO directly for the service and the BSO paid Nesbitt for his time spent working the special detail.  Id. ¶¶ 5-6.  The Lauderdale Lakes Wal-Mart had hired the special detail because it had experienced a significant

---

[2]     Anderson has only responded to certain facts posited by Defendants. Pursuant to Local Rule 56.1(b), any fact not controverted will be deemed admitted.

2

problem with shoplifting.  Id. ¶¶ 6-7.  To combat shoplifting, Wal-Mart also required all customers leaving the store to display receipts for their purchases.  Id. ¶ 7.  Wal-Mart specifically placed employees at the front of the store to enforce this policy.  Id.

On September 25, 2008, Anderson and her daughter, Plaintiff Wynter, went to the Wal-Mart to shop.  Anderson's Facts ¶ 1; Defendants' Response Facts ¶ 1.  They selected a number of items and then paid for them at one of the check out lines. Anderson's Facts ¶ 4.  After completing their purchase, Wynter pushed the shopping cart towards the exit while Anderson walked ahead.  Anderson's Facts ¶ 6; Defendants' Response Facts ¶ 6.  When Wynter had pushed the cart halfway out the door, Ella Ford, a Wal-Mart employee, requested that she show her receipt.  Anderson's Facts ¶¶ 13-14; Defendants' Response Facts ¶¶ 13-14.  Wynter called to her mother to inform her that the receipt needed to be shown.  Anderson's Facts ¶ 17; Defendants' Response Facts ¶ 17.  Anderson yelled that she did not need to show her receipt because she had paid for the groceries.  Anderson's Facts ¶ 18; Defendants' Response Facts ¶ 18.  She then threw the receipt in the direction of Wynter and Ms. Ford. Anderson Facts ¶ 20; Defendants' Response Facts ¶ 20.  Nesbitt was alerted that Anderson refused to show her receipt.  Anderson's Facts ¶ 25; Defendants' Response Facts ¶ 25.

Nesbitt went outside to inform Anderson that he had been alerted that she refused to allow her purchases to be verified.  Anderson's Facts ¶ 44; Defendants' Response Facts ¶ 44.  Anderson refused to show her receipt to Nesbitt.  Anderson's Facts ¶ 46; Defendants' Response Facts ¶ 46.  Anderson then proceeded to walk to her car with the cart.  Anderson's Facts ¶ 55; Defendants' Response Facts ¶ 55.  Nesbitt

3

grabbed the handle of the cart.  Anderson's Facts ¶ 57; Defendants' Response Facts ¶ 57.  Anderson then began to remove bags from the cart to place them into her car.  Anderson's Facts ¶ 59; Defendants' Response Facts ¶ 59.  Nesbitt pushed the cart back towards the store.  Anderson's Facts ¶ 62; Defendants' Response Facts ¶ 62.  Anderson followed Nesbitt back towards the store.  Anderson's Facts ¶ 64; Defendants' Response Facts ¶ 64.  A crowd gathered outside the store.  Anderson's Facts ¶ 68; Defendants' Response Facts ¶ 68.  A bystander handed Anderson her receipt and she proceeded to tear it into pieces and throw it towards Nesbitt.  Anderson's Facts ¶¶ 71-72; Defendants' Response Facts ¶ 72. Nesbitt arrested Anderson for obstruction of justice and disorderly conduct.  Anderson's Facts ¶ 76; Defendants' Response Facts ¶ 76.

After being booked, Anderson was later released on bail.  Anderson's Facts ¶¶ 84-85; Defendants' Response Facts ¶¶ 84-85.  The State Attorney filed a formal charge against Anderson for obstruction pursuant to Florida Statutes § 843.02 only.  Anderson's Facts ¶¶ 87-88; Defendants' Response Facts ¶¶ 87-88.  On August 13, 2009, the State Attorney dismissed the case.  Anderson's Facts ¶ 89; Defendants' Response Facts ¶ 89.

The Amended Complaint brings claims against Lamberti for false arrest (Count II), and Nesbitt for violations of 42 U.S.C. § 1983 (Counts III, VI) and malicious prosecution (Count V).  See Am. Compl. [DE 48].  The remaining parties have now filed cross motions for summary judgment.

## II. DISCUSSION

### A. Legal Standard.

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is

merely colorable, or is not significantly probative, summary judgment may be granted."

<u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

## B. Nesbitt is Entitled to Qualified Immunity on Anderson's First Amendment Section 1983 Claim (Count III).[3]

Defendants first argue that Nesbitt is entitled to qualified immunity as to Anderson's First Amendment section 1983 claim.  Defendants' Motion at 4.  Nesbitt contends that he had probable cause or arguable probable cause to arrest Anderson. <u>Id.</u> at 9.  Specifically, Defendants argue that Nesbitt is entitled to qualified immunity on Anderson's section 1983 claim for violation of her First Amendment right to free speech (Count III) because he had probable cause to arrest her for both disorderly conduct in violation of Fla. Stat. § 877.03 and obstructing justice in violation of Fla. Stat. § 843.02. <u>Id.</u>  Nesbitt argues that Anderson's conduct went beyond verbal protests and profanity, but also involved Anderson's physical interference with his investigation.  <u>Id.</u> at 10-13. Anderson disagrees, arguing that Nesbitt did not have probable cause because the unlawful detention occurred prior to any alleged disorderly conduct.  Anderson Response at 14.

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Wood v.</u>

_____

[3]      Although Anderson attempts to assert that Count III is a section 1983 false arrest claim, <u>see</u> Anderson's Motion at 9, the Court agrees with Defendants that a false arrest section 1983 claim was not properly plead in Count III. <u>See</u> Defendants' Response at 4-5.  Count III does not reference the Fourth Amendment.  Am. Compl. ¶¶ 84-91.  Accordingly, the Court has treated Count III as a section 1983 claim based on an alleged violation of Anderson's First Amendment rights.  The Court declines, as Defendants request, to find that this claim has been abandoned.

Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (internal citations and quotations omitted).

Qualified immunity is intended "to allow government officials to carry out their

discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the

federal law." Id.  Once an official establishes that he was acting within the scope of his

discretionary authority, the burden shifts to the plaintiff to overcome the privilege of

qualified immunity.  See Case v. Eslinger, 555 F.3d 1317, 1325-26 (11th Cir. 2009). To

do so, the plaintiff must prove: (1) that the defendant violated a constitutional right and

(2) that this right was clearly established at the time.  See id.  The Eleventh Circuit has

held that

> A warrantless arrest without probable cause violates the Fourth Amendment and
> provides the basis for a § 1983 claim.  Ortega v. Christian, 85 F.3d 1521, 1525
> (11th Cir. 1996).  Likewise, arrest in retaliation for exercising one's First
> Amendment rights may also provide a basis for a § 1983 claim. See Redd v. City
> of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998).  However, the existence of
> probable cause is an absolute bar to both claims.  Ortega, 85 F.3d at 1525;
> Redd, 140 F.3d at 1383.

Anderson v. City of Naples, No. 12-10917, 2012 WL 6570895, at *4 (11th Cir. Dec. 17,

2012). "[A] plaintiff who complains of retaliation for exercising rights protected by the

First Amendment must allege first, that his speech or act was constitutionally protected;

second, that the defendant's retaliatory conduct adversely affected the protected

speech; and third, that there is a causal connection between the retaliatory actions and

the adverse effect on speech."  Abella v. Simon, 482 F. App'x 522, 523 (11th Cir. 2012)

(quoting Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)).

Here, Nesbitt argues that he was acting within his discretionary authority at the

time he arrested Anderson.  Defendants' Motion at 5.  In her response, Anderson does

7

not contest that Nesbitt was acting within the scope of his discretionary authority at the time of her arrest.  <u>See</u> Defendants' Reply at 3.  Instead, Anderson argues that Nesbitt lacked probable cause to arrest her for both obstructing justice and disorderly conduct.  Anderson Response at 13-16.  Accordingly, the Court will focus on whether Nesbitt had probable cause to arrest Anderson under either statute.

"For probable cause to exist, both federal and Florida law say that an arrest must be objectively reasonable based on the totality of the circumstances."  <u>United States v. Lyons</u>, 403 F.3d 1248, 1253 (11th Cir. 2005) (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002)).  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  <u>Id.</u> (interal citations and internal quotation marks omitted).  To receive qualified immunity, an officer need only have "arguable probable cause."  <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1257 (11th Cir. 2010).  Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff."  <u>Id.</u> (internal citations and quotations omitted).  Whether arguable probable cause exists "depends on the elements of the alleged crime and the operative fact pattern."  <u>Id.</u>

Probable cause for disorderly conduct under Fla. Stat. § 877.03[4] cannot be

---

[4]      Fla. Stat. § 877.03 provides that "[w]hoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly

based on "mere words." <u>Davis v. Williams</u>, 451 F.3d 759, 766 (11th Cir. 2006) (citing

<u>Butler v. Dowling</u>, 750 So. 2d 674 (Fla. Dist. Ct. App.1999) (finding no arguable

probable cause under § 877.03 when plaintiff was not using profanity, was not yelling,

and was not agitated); <u>Bell v. Anderson</u>, 414 So. 2d 550 (Fla. Dist. Ct. App.1982)

(finding no probable cause for criminal action because words did not incite a breach of

the peace)).   "[W]here the basis for an arrest under § 877.03 is speech only, the

statute's application is limited to either words which by there very utterance ... inflict

injury and tend to incite an immediate breach of the peace, or to words, known to be

false, reporting some physical hazard in circumstances where such a report creates a

clear and present danger of bodily harm to others." <u>Anderson</u>, 2012 WL 6570895, at *5

(quoting <u>Lyons</u>, 403 F.3d at 1254).  Similarly, "Florida courts have generally held, with

very limited exceptions, that physical conduct must accompany offensive words to

support a conviction [for obstructing justice] under § 843.02." <u>Davis</u>, 451 F.3d at 765

(citations and footnote omitted).[5]  "Words alone may result in obstruction of justice

where the officer in question is 1) serving process; 2) legally detaining a person; or 3)

---

conduct, shall be guilty of a misdemeanor of the second degree, punishable as
provided in s. 775.082 or s. 775.083."  Fla. Stat. § 877.03.

　　　　[5]　　Fla. Stat. § 843.02 states that "[w]hoever shall resist, obstruct, or oppose
any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Parole
Commission or any administrative aide or supervisor employed by the commission;
county probation officer; parole and probation supervisor; personnel or representative
of the Department of Law Enforcement; or other person legally authorized to execute
process in the execution of legal process or in the lawful execution of any legal duty,
without offering or doing violence to the person of the officer, shall be guilty of a
misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083."
Fla. Stat. § 843.02.

asking for assistance."  Id. at 765 n.9 (quoting Francis v. State, 736 So. 2d 97, 99 n.2 (Fla. Dist. Ct. App. 1999)).

Defendants argue that Nesbitt had arguable probable cause to arrest Anderson for both disorderly conduct and obstructing justice because her conduct involved more than mere "verbal protests and repeated use of profanity."  Defendants' Motion at 10. Instead, Defendants allege that Anderson  "physically interfered with Sergeant Nesbitt's ability to conduct his investigation by pulling on her cart to prevent Sergeant Nesbitt from taking her groceries back into the store for verification, grabbed her groceries from Sergeant Nesbitt, causing them to fall onto the floor, tore up her receipt further preventing Sergeant Nesbitt from being able to verify her purchases, threw the receipt in the officer's face, and became so irate and agitated that her actions prompted several bystanders to interject themselves in the dispute in an effort to calm her down." Id.  The Court will address whether Nesbitt had arguable probable cause to arrest Anderson for both offenses individually below.

<u>1. Nesbitt had Arguable Probable Cause to Arrest Anderson for Disorderly Conduct in violation of Fla. Stat. § 877.03.</u>

Although Defendants assert that Anderson engaged in physical conduct which inhibited his investigation, the record does not reflect that any of these alleged physical acts, i.e. grabbing groceries and tearing and throwing the receipt, "are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them."  Fla. Stat. § 877.03.  Nonetheless, because the record reflects that Anderson's conduct, both verbal and nonverbal, incited bystanders to engage with her and interject themselves into the situation, the Court

concludes that Anderson had arguable probable cause to arrest Anderson for disorderly conduct pursuant to Fla. Stat. § 877.03. Under Florida law, "[t]he mere fact that other people come outside or stop to watch what is going on is insufficient to support a conviction for disorderly conduct. Instead, there must be some evidence that the crowd is actually responding to the defendant's words in some way that threatens to breach the peace." Fields v. State, 24 So. 3d 646, 648 (Fla. Dist. Ct. App. 2009).

Here, it is not the mere fact that a crowd of as many as 20 individuals gathered to watch Anderson shout profanities at Nesbitt that demonstrates that Nesbitt had arguable probable cause to arrest Anderson, but rather that some members of the crowd responded to Anderson's actions. See Defendants' Facts ¶ 19, 30, 31.[6] One bystander, Daryl Allen, grabbed Anderson to calm her down, which only further enraged Anderson. Defendants' Facts ¶ 30; Deposition of Rudolph Nesbitt, Exhibit D to Defendants' Motion [DE 110-4] ("Nesbitt Dep.") at 84:20-85:9 (reflecting that Anderson was also shouting profanities at Darryl Allen).[7] Another bystander, Leroy Smith, approached Nesbitt and told him that he had Anderson's receipt. Defendants' Facts ¶ 30. Smith handed the receipt to Anderson who then proceeded to rip it up and throw it. Id. ¶ 34. Because Anderson's words and conduct inspired bystanders to act, Nesbitt had arguable probable cause to arrest her for disorderly conduct. See Barry v. State, 934 So. 2d 656, 659 (Fla. Dist. Ct. App. 2006) (holding that evidence was insufficient to

---

[6]     Anderson does not respond to Paragraphs 30 and 31 of Defendants' Facts. Thus, they are deemed admitted.

[7]     Anderson agrees that Mr. Allen grabbed her, stating that, "[i]t was not until Daryl Allen grabbed her that . . . the three bystanders became involved." Anderson's Response Facts ¶ 29.

support conviction for disorderly conduct where "the State presented some evidence that motorists slowed down to watch the interaction between [Plaintiff] Barry and Officer Pruitt.  However, the State presented no evidence that these individuals actually responded to Barry's words or that anyone in the area was actually incited into engaging in an immediate breach of the peace.").  Under these facts, Nesbitt had arguable probable cause to arrest Anderson for disorderly conduct because bystanders "responded" to Anderson's words.  Accordingly, "reasonable officers in the same circumstances and possessing the same knowledge as [Nesbitt] could have believed that probable cause existed to arrest Plaintiff."  See Grider, 618 F.3d at 1257.

### 2. Nesbitt also had Arguable Probable Cause to Arrest Anderson for Obstructing Justice in Violation of Fla. Stat. § 843.02.

Defendants also argue that Nesbitt had arguable probable cause to arrest Anderson for obstructing justice in violation of Fla. Stat. § 843.02 because "Anderson's conduct did not involve mere words, but rather, a combination of physical action and offensive words."  Defendants' Motion at 13.  In opposition, Anderson argues that her arrest for obstructing justice was unlawful because Nesbitt was not in the lawful execution of a legal duty at the time of her arrest.  Anderson Response at 11.  Anderson also asserts that Nesbitt's investigation into whether she paid for her groceries was conducted pursuant to Wal-Mart policy, and, thus, was not lawful execution of any legal duty.  Id. at 12-13.  She further argues that Nesbitt never had any reasonable suspicion that she had committed any theft.  Id. at 13.  In their reply, Defendants argue that because Anderson's conduct did not involve mere words, she could be arrested for obstructing justice even if she did not obstruct Nesbitt in the

12

execution of a legal duty.  Defendants' Reply at 8.  The Court finds that, under the circumstances, Nesbitt had arguable probable cause to arrest Anderson for obstructing justice.

"To support a conviction pursuant to § 843.02, the state must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty."  Davis, 451 F.3d at 765 (quoting Slydell v. State, 792 So. 2d 667, 671 (Fla. Dist. Ct. App. 2001) (internal quotation marks omitted)).  Under Florida law, a police officer is lawfully executing a legal duty when he is "(1) serving process, (2) legally detaining a person, and (3) asking a person for assistance with an ongoing emergency."  Storck v. City of Coral Springs, 354 F.3d 1307, 1315 (11th Cir. 2003) (citations omitted).[8]  Here, it is undisputed that

---

[8]       In D.G. v. State, 661 So. 2d 75 (Fla. Dist. Ct. App. 1995), the Second District Court of Appeal held that:

> If a police officer is not engaged in executing process on a person, is not legally detaining that person, or has not asked the person for assistance with an ongoing emergency that presents a serious threat of imminent harm to person or property, the person's words alone can rarely, if ever, rise to the level of an obstruction. Thus, obstructive conduct rather than offensive words are normally required to support a conviction under this statute.  See, e.g., R.S. v. State, 531 So. 2d 1026 (Fla. 1st DCA 1988); Johnson v. State, 433 So. 2d 648 (Fla. 2d DCA 1983); English v. State, 293 So. 2d 105 (Fla. 1st DCA 1974). See also S.D. v. State, 627 So. 2d 1261 (Fla. 3d DCA 1993) (holding that defendant's verbal and nonverbal conduct could not be construed as failure to assist officer in performance of duties where officer did not request defendant for assistance).

661 So. 2d at 76-77.  Defendants suggest, that if Anderson was engaged in physical conduct which obstructed Nesbitt, she could be guilty of obstructing justice even if Nesbitt was not executing a legal duty at the time of the arrest.  See Defendants' Reply at 8.  To support this argument, Defendants cite Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir. 1993), where the Eleventh Circuit observed that "[a]s we understand Florida law, it is a crime not only to oppose or to obstruct a law officer in the execution of the officer's duty, but also to attempt to oppose or to obstruct the officer."  7 F.3d at

this case involves more than mere words because Anderson engaged in physical conduct after she was approached by Nesbitt including attempting to load her groceries into her car while Nesbitt was investigating whether she had paid for them, Anderson's Facts ¶ 59, and ripping up her receipt and throwing it towards Nesbitt[9] once he had taken her groceries back into the store to verify the purchase.  Id. ¶ 72.  Thus, whether Nesbitt had arguable probable cause to arrest Anderson for obstructing justice hinges on whether he was executing a legal duty at the time he arrested Anderson.

First, the Court notes that the majority of Anderson's arguments are premised on Count III stating a section 1983 false arrest claim against Nesbitt.  However, as noted by Defendants, the Amended Complaint contains no such Fourth Amendment claim.  Accordingly, the Court will ignore these arguments.  Second, the Court finds that Nesbitt had arguable probable cause to arrest Anderson for obstructing justice.  Nesbitt had been informed by Wal-Mart employees that Anderson refused to show her receipt upon existing the store, in violation of Wal-Mart policy.  Nesbitt Dep. at 56:10-15.  When Nesbitt approached Anderson outside the store, however, he did not seek to detain her.  Rather, he only sought to get Anderson to provide a receipt for her purchases.

_____

1558-59. The Court believes that Nesbitt was required to be executing a legal duty to have arguable probable cause to arrest Anderson for obstructing justice.  In Davis v. State, 973 So. 2d 1277 (Fla. Dist. Ct. App. 2008), the Second District Court of Appeal stated that "[o]ne element of the crime of resisting an officer without violence is that the officer was engaged in the lawful execution of a legal duty."  973 So. 2d at 1279.  Accordingly, without a reasonable suspicion that the defendant engaged in criminal activity, the court held that the State failed to establish that the officers were engaged in the lawful execution of a legal duty at the time of the defendant's arrrest.  Id.

[9]      It is irrelevant for the purposes of establishing arguable probable cause for obstructing justice whether Anderson threw the receipt to the ground, as she contends, or at Nesbitt's face, as he contends.

Deposition of Shernette Anderson [DE 114-5] ("Anderson Dep.") at 167:7-12.

Anderson, however, began cursing at him immediately.  Id. at 167:13-168:3.

Furthermore, the record does not support that Anderson was arrested prior to the time

that she removed her bags from her cart.  Id. at 90:2-8 (Q. Okay. But is it your

testimony that the officer took all of the groceries at some point? He took all of the

bags? A. Yes. Q. You are not under arrest at this point; correct? A. Not yet.).  Anderson

also testified that she was not handcuffed until after she ripped up and threw her receipt

towards Nesbitt.  Id. at 95:22-25.

Given Anderson's hostility towards both Nesbitt and Wal-Mart employees upon

being asked to display her receipt, Nesbitt had arguable probable cause to conclude

that a crime may have been committed and to investigate further.  Accordingly, when

Anderson interfered with his ability to investigate whether she had in fact purchased the

groceries–by trying to carry them away from him and ripping up her receipt–Nesbitt had

arguable probable cause to believe that Anderson had obstructed justice.  The record

simply does not support that Anderson was arrested for exercising her First

Amendment rights.

Moreover, since the Court has already found that the record demonstrates that

Nesbitt had arguable probable cause to arrest Anderson for disorderly conduct, Nesbitt

is entitled to qualified immunity regardless of whether he also had arguable probable

cause to arrest her for obstructing justice.  The Eleventh Circuit has held that "[w]hen an

officer makes an arrest, which is properly supported by probable cause to arrest for a

certain offense, neither his subjective reliance on an offense for which no probable

cause exists nor his verbal announcement of the wrong offense vitiates the arrest."

15

Lee, 284 F.3d at 1196 (internal quotation marks and citations omitted); see also Williams v. Taylor-Lee, 397 F. App' x. 608, 610 (11th Cir. 2010) (finding that where arguable probable cause existed for plaintiff's arrest for one offense, it was "immaterial" whether probable cause also existed for arrest for another offense); Sada v. City of Altamonte Springs, No. 6:09-cv-506-Orl-31KRS, 2010 WL 5209309, at *5 (M.D. Fla. Dec. 16, 2010) ("Thus, because the officers had probable cause to arrest Sada for battery, the question of whether they had probable cause to arrest him for disorderly conduct becomes moot. The existence of probable cause to arrest Sada also defeats any First Amendment claim he might have had."). Thus, even if Nesbitt was not executing a legal duty at the time he arrested Anderson for obstructing justice, Nesbitt is still entitled to qualified immunity–and summary judgment–on Anderson's section 1983 claim for violation of her First Amendment rights.

## C. Nesbitt is Entitled to Qualified Immunity on Anderson's Section 1983 Malicious Prosecution Claim (Count VI).

Defendants also contend that Nesbitt is entitled to qualified immunity on Anderson's section 1983 claim for malicious prosecution. Defendants' Motion at 14. Nesbitt is entitled to qualified immunity, Defendants argue, because he had probable cause and/or arguable probable cause to arrest Anderson for either breach of the peace/disorderly conduct or obstructing justice. Id. at 14-15. Moreover, Defendants contend that there is no record evidence that Nesbitt acted with malice or that he was involved in the State Attorney's decision whether to prosecute Anderson. Id. at 15. Anderson disagrees, arguing that "[t]here was never probable cause nor arguable probable cause for plaintiff's arrest for obstruction." Anderson Response at 15.

16

To plead a claim for malicious prosecution under section 1983, a plaintiff must establish (1) the elements of the common law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Under Florida law, a malicious prosecution plaintiff must show that (1) an original judicial proceeding was commenced or continued against him; (2) the defendants involved were the legal cause of the proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in the plaintiff's favor; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the defendants; and (6) the plaintiff suffered damages as a result of the original proceeding. Id. (citing Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002)). Because the Court has already concluded above that Nesbitt had arguable probable cause to arrest Nesbitt for obstructing justice, the sole charge for which Anderson was prosecuted, Nesbitt is entitled to qualified immunity. Additionally, because an absence of probable cause is a required element, Anderson's malicious prosecution claim fails on the merits. Lewis v. Morgan, 79 So. 3d 926, 929 (Fla. Dist. Ct. App. 2012) ("[T]he existence of probable cause will defeat a claim for malicious prosecution because lack thereof is a necessary element of the claim.") (citations omitted).

Even if Nesbitt lacked probable cause to arrest Anderson for obstructing justice, Anderson's malicious prosecution claim would still fail because there is no evidence that Nesbitt was the legal cause of the proceeding against Anderson. As Defendants point out, there is no evidence that Nesbitt had any part in the decision whether to prosecute Anderson. In response, Anderson alleges, in a conclusory manner, that

Nesbitt was the legal cause of the proceeding because "it was Defendant Nesbitt who arrested Plaintiff and thus initiated the proceeding."  Anderson Response at 14. However, police officers are not the legal cause of an original proceeding where there is "no evidence that they had anything to do with the decision to prosecute or that they 'improperly influenced' that decision." Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir.2008) (citing Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir.1994)); see also Hargis v. City of Orlando, No. 6:12-cv–723-Orl-37KRS, 2012 WL 6089715, at *9 (M.D. Fla. Dec. 7, 2012) ("However, Plaintiff's conclusory assertion that Officer Springer was the legal cause of the prior criminal proceeding is not enough."). Thus, the fact that Nesbitt arrested Anderson, standing alone, does not support that he was the legal cause of the proceeding against her.  Accordingly, the Court will grant summary judgment for Nesbitt on this claim.

## D. Nesbitt is Entitled to Summary Judgment on Anderson's State Law Malicious Prosecution Claim (Count V).

Defendants also move for summary judgment on the state law malicious prosecution claim against Nesbitt.  Defendants' Motion at 15.  Defendants argue that Nesbitt is entitled to summary judgment because Nesbitt had probable cause to arrest Anderson, the record does not demonstrate that Nesbitt acted with malice, and Nesbitt was not involved in the State Attorney's decision to prosecute Anderson.  Id.  Anderson contends that Nesbitt is not entitled to summary judgment because Nesbitt did not have probable cause to arrest Anderson for obstructing justice, Nesbitt was involved in the decision to prosecute Anderson because he brought the case to the State Attorney, and malice can be inferred.  Anderson Response at 16.

18

The elements to establish malicious prosecution under Florida law are set forth above.  As previously discussed, Anderson's state law malicious prosecution claim fails because Nesbitt had probable cause to arrest Anderson for obstructing justice.[10]  Even if Nesbitt did not have probable cause to arrest Anderson, her malicious prosecution claim still fails because Anderson has failed to establish that Nesbitt was the legal cause of the proceeding against her.  Anderson contends that Nesbitt was involved in the decision to prosecute her because he submitted paperwork to the State Attorney.  Anderson Response at 16.  This Court has already rejected a similar argument from Anderson's counsel.  In Figueroa v. Miami-Dade County, No. 11-20499-CIV, 2012 WL 2050586 (S.D. Fla. June 6, 2012), a plaintiff, also represented by Gary Kollin, asserted that the defendant police officer:

> does not have to be actively involved in the decision to prosecute, as long as he was responsible for the commencement of the original criminal proceedings. However, Plaintiff has offered no authority in support of this proposition. Consequently, Defendant is entitled to summary judgment on both the § 1983 malicious prosecution claim and the state law malicious prosecution claim.

Id. at *6.  Here, Anderson has not cited any authority that merely providing paperwork regarding an arrest to the State Attorney renders the officer the cause of the legal proceeding.  Anderson's claim is also belied by the factual record.  Exhibit 25, which Plaintiff cites, states that "[o]ur office filed only the resisting without violence and filed a no information on the disorderly conduct."  Dismissal Memorandum, Exhibit 25 to Anderson's Motion for Summary Judgment [DE 114-25] at 1.  This document supports

---

[10]      Although the Court's discussion of whether Nesbitt was entitled to qualified immunity was premised on whether Nesbitt had arguable probable cause, the Court believes that the record also supports that Nesbitt had probable cause.

that it was *the State Attorney*, not Nesbitt, that decided to proceed with the obstructing justice charge.[11]  Finally, because the Court has found that Nesbitt had probable cause to arrest Anderson for obstructing justice, the Court also agrees with Defendants that there is no record evidence of any malice.  See Durkin, 814 So. 2d at 1249 ("[T]he plaintiff need not allege actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others.").  Accordingly, the Court will grant summary judgment for Nesbitt on Count V.[12]

### E. Lamberti is Entitled to Summary Judgment on Anderson's State Law False Arrest/False Imprisonment Claim (Count II).

Finally, Defendants move for summary judgment on the state law false arrest/false imprisonment claim against Defendant Lamberti.  Defendants' Motion at 17.  Defendants contend that summary judgment is proper on this claim because "Nesbitt had probable cause to arrest Plaintiff for breach of the peace/disorderly conduct and/or obstructing justice."  Id. at 18.  Specifically, Defendants argue that Nesbitt had probable cause to arrest Anderson because she "refused to cooperate with the door greeters at Wal-Mart and show her receipt for her purchases, she immediately began cursing and yelling at Sergeant Nesbitt when he made contact with her to follow up on her refusal to

---

[11]    Indeed, the fact that the State Attorney proceeded with the obstructing justice charge, but not the disorderly conduct charge, completely undercuts Anderson's assertion that Nesbitt was the legal cause of her prosecution because he provided papers to the State Attorney.

[12]    Because the Court grants summary judgment on the state law malicious prosecution claim against Nesbitt, the Court does not address Defendants' argument that Nesbitt is entitled to sovereign immunity under Fla. Stat. § 768.28(9)(a) on this claim.  See Defendants' Motion at 16.

verify her purchases, she pulled her cart and her groceries from Sergeant Nesbitt causing her groceries to fall on the floor and she ripped up her receipt and threw it at the officer's face, thereby interfering and impeding with his lawful investigation." Id. at 18-19.  In opposition, Anderson argues that she was unlawfully detained.  Anderson Response at 17.  She also argues that because Nesbitt had no probable cause and no reasonable suspicion to detain her, she is entitled to summary judgment on this claim. Id.

Florida law defines false arrest as "unlawful restraint of a person against that person's will." Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. Dist. Ct. App. 2006) (citations omitted).  "In a false arrest action, probable cause is an affirmative defense to be proven by the defendant." Id. (citations omitted).  "Probable cause is evaluated from the viewpoint of a prudent cautious police officer on the scene **at the time of the arrest**." Miami-Dade Cnty. v. Asad, 78 So. 3d 660, 673 (Fla. Dist. Ct. App. 2012) (quoting State v. Riehl, 504 So. 2d 798, 800 (Fla. Dist Ct. App. 1987) (emphasis in original)).  "It is axiomatic that **hindsight may not be employed** in determining whether a prior arrest or search was made upon probable cause." Id. (quoting McCoy v. State, 565 So. 2d 860, 861 (Fla. Dist. Ct. App. 1990) (emphasis in original)).  "[A]n officer may conduct a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot, without violating the Fourth Amendment." United States v. Lester, 477 F. A'ppx 697, 698 (11th Cir. 2012) (quoting United States v. Hunter, 291 F.3d 1302, 1305-06 (11th Cir. 2002)).  In detention cases, Florida requires that the officer had a reasonable suspicion that a detainee was committing a crime. C.N. v. State, 49 So. 3d 831, 833 (Fla. Dist. Ct. App.

2010).

Here, the Court finds that Nesbitt had both a reasonable suspicion to detain Anderson, and as discussed in section B, supra, probable cause to arrest her for disorderly conduct and obstructing justice.  Nesbitt had been informed by Wal-Mart employees that Anderson refused to show her receipt upon existing the store, in violation of Wal-Mart policy.  Nesbitt Dep. at 56:10-15.  When Nesbitt approached Anderson outside the store, however, he did not seek to detain her.[13]  Rather, he only sought to get Anderson to provide a receipt for her purchases.  Anderson Dept. at 167:7-12.  Anderson, however, began cursing at him immediately.  Id. at 167:13-168:3. Anderson's hostility towards both Nesbitt and Wal-Mart employees upon simply being asked to display her receipt gave Nesbitt probable cause to conclude that a crime may have been committed and a reasonable suspicion to detain Anderson and investigate further.  Accordingly, when Anderson interfered with his ability to investigate whether she had in fact purchased the groceries–by trying to carry them away from him and ripping up her receipt–Nesbitt had probable cause to believe that Anderson had obstructed justice.  See Defendants' Reply at 9.  As discussed in Section B.1, supra, when bystanders began engaging with Anderson to calm her down, Nesbitt had probable cause to believe that she had committed disorderly conduct.  Accordingly, because Nesbitt had probable cause to arrest Nesbitt for both obstructing justice and

---

[13]    The Court also agrees with Defendants that Nesbitt taking Anderson's groceries back towards the store did not constitute a seizure of Anderson for purposes of the Fourth Amendment.  See Defendants' Reply at 10; Anderson's Motion at 13. There is no indication in the record that Anderson was not free to leave when Nesbitt took her groceries back towards the store so that he could verify her purchase.

disorderly conduct, Anderson's false arrest/false imprisonment claim against Lamberti

fails.  Accordingly, the Court will grant summary judgment for the Defendants on this

claim.[14]

III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendants Rudolph Nesbitt, Jr. and Alfred T. Lamberti, as Sheriff of Broward

County, Motion for Summary Judgment [DE 110] is **GRANTED**;

2.    Plaintiff Shernette Anderson's Motion for Summary Judgment [DE 113] is

**DENIED**; and

3.    The Court will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 28th day of February, 2013.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.

---

[14]       Because the Court has granted summary judgment for the Defendants on all claims, the Court does not address Anderson's request for punitive damages.  See Defendants' Motion at 19.